**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RAJA RAJENDRAN,                          :        CIVIL NO. 3:22-CV-00581

    Plaintiff,              :           (Judge Mannion)

   v.                              :

CHRISTINE WORMUTH,                   :
Secretary of the Army.
                                                   :
    Defendant.
                                                   :

**<u>MEMORANDUM</u>**

**I. Introduction.**

  In this matter, the plaintiff, Raja Rajendran ("Rajendran"), proceeding *pro se*, claims that he was subjected to employment discrimination based on his national origin. Rajendran brings claims under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. Currently pending is a partial motion to dismiss the amended complaint. For the reasons set forth below, we grant in part and deny in part the pending partial motion to dismiss.

## II. Background and Procedural History.

Rajendran began this action by filing a complaint under Title VII of the Civil Rights Act of 1964 against Christine Wormuth ("the Secretary"), in her official capacity as the Secretary of the Army, the head of the agency for which Rajendran worked. *See Wadhwa v. Secretary, Dept. of Veterans Affairs*, 505 Fed.Appx. 209, 213 (3d Cir. 2012) ("First, the only proper defendant in a federal employee's Title VII action is the head of the appropriate agency."). Rajendran filed this initial complaint in the U.S. District Court for the Eastern District of Michigan on January 3, 2022. (Doc. 1). After being served (Doc. 8), the Secretary filed a motion to dismiss or transfer venue. (Doc. 10). The United States District Court for the Eastern District of Michigan transferred the case to the United States District Court for the Eastern District of Pennsylvania pursuant to a stipulated order. (Doc. 13). Following the transfer, on April 13, 2022, Rajendran filed an amended complaint against the Secretary. (Doc. 17). On April 14, 2022, the Secretary filed an unopposed motion to transfer venue to the United States District Court for the Middle District of Pennsylvania. (Doc. 19). The case was thereafter transferred to this court. (Doc. 22).

After being granted extensions of time to file a responsive pleading (Docs. 27, 33, 34), the Secretary filed the present partial motion to dismiss

(Doc. 37) and brief in support (Doc. 38). Rajendran filed a brief in opposition (Doc. 42), after also being granted an extension of time to do so. (Doc. 41). The Secretary was then granted an extension of time (Doc. 45) to file her reply brief (Doc. 47), which she filed on September 20, 2022. Though not requesting—or being granted—leave to do so, Rajendran filed a sur-reply on September 21, 2022.[1] The following facts are taken from Rajendran's amended complaint.

Rajendran alleges that "[t]he defendant discriminated against [him] because of his national origin (Asian/Indian), in job assignments, wages, promotions, discipline and other terms [and] conditions and privileges of employment." (Doc. 17 at 9). Rajendran began as a mechanical engineer, at pay scale GS-9, at Tobyhanna Army Depot on March 15, 2009. (Doc. 17 at 9).[2] Rajendran was qualified for the job, "with a Master's degree in Mechanical Engineering," "level 3 certification in SYSTEMS PLANNING

---

[1] Though Rajendran was not granted leave to file a sur-reply, as required by Local Rule 7.7, we considered it and found that it does not change our analysis. We note that, in this sur-reply, Rajendran requests that we transfer this case to Harrisburg. (Doc. 48 at 3). There is no basis for the transfer of this case between vicinages in the same district. We thus take no action on this request.

[2] All page numbers cited in this Memorandum are the page numbers produced by CM-ECF, rather than any page numbers appearing within the documents.

RESEARCH DEV AND ENG[,]" and "a level 2 certification in Program Management[.]" *Id*.

In April 2009, Rajendran was assigned to report to Jeff Morman ("Morman") as his first line supervisor, and to report to Mark Viola ("Viola"), as his second line supervisor. *Id*. During this first year of employment, Rajendran was rated "excellent" on his annual performance review, according to the complaint. *Id*. at 11. However, though he understood it to be procedurally required, Rajendran was not promoted to the pay scale of GS-11 at the end of his first year of employment. *Id*. at 14.

Rajendran further alleges that "several times" when he requested training his supervisors denied the requests. *Id*. According to Rajendran, he was "denied training that other similarly situated Caucasian employees were allowed to take." *Id*. at 12. When Rajendran was given opportunities to participate in training, his supervisors "failed to make proper reservations and gave misleading instructions for training making it impossible for [Rajendran] to attend the training, and then accused [Rajendran] of missing training." *Id*.

On August 18, 2010, Rajendran filed an EEOC complaint alleging discrimination based on national origin. *Id*. at 7, 10. His employer then began to retaliate against him for filing the complaint.

4

For example, on August 23, 2010, Rajendran asserts that he "forgot to sign-in." *Id.* at 10. As a consequence, he was considered absent without leave (AWOL). *Id.* Rajendran was subsequently suspended from work for three days. *Id.* This suspension resulted from his brief term of absence without leave and his failure to attend a scheduled training. *Id.* Rajendran explains that he was unable to attend the training because the travel department "failed to reserve a rental car[,]" and Morman denied "every other mode of transportation requested[,]" such that Rajendran faced "stringent constraints requiring [him] to travel 555 miles on a Sunday from home in Michigan . . . in spite of explaining the difficulties." *Id.* at 10–11. Rajendran asserts that the travel restrictions he faced were "not applied to other Caucasian employees." *Id.* at 12. Rajendran compares his resulting three-day suspension to the treatment of another employee, who is Caucasian, who once forgot to sign in and was reminded to do so at noon without other consequences, and a second Caucasian employee, Larry Frable, who "had committed multiple severe offenses" and received less severe consequences than Rajendran's three-day suspension. *Id.* at 10. Rajendran further alleges that once, when discussing failure to sign in, Morman "stated that he would give to anyone an opportunity to explain[,] but he failed to give [Rajendran] an opportunity to explain his whereabouts." *Id.*

Additionally, after filing the EEOC complaint, Rajendran received a negative performance review. *Id.* at 11. Though Rajendran asserts that he never had a "negative comment," in his performance review "it was stated he could not get along with other people." *Id.* Further, Rajendran alleges that "[o]ther Caucasian employees did not get along with other employees including one employee who swore at the Plaintiff and bragged about it and yet this incident was not escalated by Supervisor Morman nor any disciplinary action taken." *Id.* at 12.

Rajendran also asserts that, as a result of retaliation, he was demoted. *Id.* at 13. Rajendran was downgraded from a mechanical engineer at pay scale GS-9 to an engineering technician at pay scale GS-7. *Id.* at 12. Rajendran alleges that the agency "did not follow the correct procedure" to demote him to this new position and pay scale. *Id.* at 14. Finally, according to the amended complaint, the Agency has failed to fully reimburse Rajendran for his travel expenses, also as a means of retaliation for filing an EEOC complaint. *Id.* at 13.

On December 23, 2010, Rajendran filed an amendment to his EEOC complaint. *Id.* at 7. On January 20, 2011, the EEOC proceeding was closed when the parties entered into a settlement agreement. *Id.* at 12. But the Agency later breached the settlement agreement. *Id.* Accordingly, the Office

6

of Federal Operations (OFO) ordered the Agency to provide Rajendran with two options to remedy this breach. *Id.* First, Rajendran could return the settlement payment already received, and, if he did so, the Agency would cancel the settlement agreement, reinstate the EEOC case, and offer Rajendran a *status quo* position. *Id.* Alternatively, Rajendran could choose to retain the settlement payment already received and require the Agency to comply with the terms of the settlement agreement and dismiss the EEOC case. *Id.* Rajendran chose the first option.

Because Rajendran chose to be reinstated to a *status quo* position, in September 2013 he was reinstated. *Id.* at 13. However, Rajendran asserts that the position he was offered, and accepted, was not a *status quo* position as it was in a different branch with a different position description and, though the position was officially at a pay scale of GS-9, he was "expected [ ] to perform at a GS[-]13 level, while [being compensated] at a GS[-]7 level[.]" *Id.* at 7, 13. Rajendran alleges that this discrepancy was retaliation and resulted in "constructive discharge forcing [him] to resign." *Id.* at 7, 13. Rajendran thus requested the OFO to order compliance and submitted a non-compliance memo in 2013. *Id.* at 7, 14.

After the Agency concluded its investigation into the alleged discrimination that was the subject of the EEOC complaint, Rajendran

requested a hearing before an Administrative Law Judge (ALJ). *Id.* at 7. Prior to the hearings, Rajendran "amended with several additional complaints including a complaint that Agency failed to reinstate a *status quo* position per OFO's order." *Id.* The hearings were held on April 18, 2016, April 19, 2016, May 19, 2016, and August 2, 2016. *Id.* at 8. The ALJ issued a decision on July 28, 2020, finding no discrimination or retaliation. *Id.* at 8. The ALJ "did not render a verdict on the noncompliance on the OFO order issue." *Id.*

Rajendran appealed the ALJ's decision to the EEOC, which denied the appeal on May 25, 2021. *Id.* On June 23, 2021, Rajendran filed a reconsideration request, which the EEOC denied on October 12, 2021. *Id.* On November 17, 2021, Rajendran filed a second reconsideration request, which the EEOC also denied. *Id.* Rajendran then filed the instant complaint on January 3, 2022. *Id.*

Rajendran sets out five counts in his complaint. *Id.* Rajendran, however, is less than clear which claims he is bringing under the PHRA, and which claims he is bringing under Title VII. Instead, on the form complaint block that asked under which statute the action is brought, Rajendran marked an X next to both Title VII and the PHRA. *Id.* at 1. Rajendran does not state the statutes he intends to invoke when he identifies his five counts.

In Count I, titled "National Origin Discrimination – Disparate Treatment," Rajendran asserts that the Agency "discriminated against [him] because of his national origin (Asian/Indian) in the terms, conditions, and privileges of employment" and, accordingly, Rajendran had "to seek other employment and/or income; to forego compensation and benefits; to have his career significantly adversely impacted . . . ; and to endure mental anguish, emotional distress, humiliation, and shame." *Id.* at 14–15. Rajendran brings Count II for retaliation, alleging that the Agency "retaliated against [him] for [his] act of objecting to and reporting acts of national origin discrimination and harassment." *Id.* at 15–16. He alleges that the retaliation included his demotion, "taking disciplinary action with comparatively severe consequence for forgetting to sign-in[,] and giving [him] a non-status quo position." *Id.* at 15. Count III is for a hostile work environment, which Rajendran avers was created when he was "given less desirable positions[,]" "demoted," and "wrongfully disciplined and harassed," in addition to being "denied training multiple times." *Id.* at 16. In sum, Rajendran argues that he "was subjected to a hostile work environment because he was forced to endure the humiliation and embarrassment of not receiving the same benefits afforded to other similarly situated Caucasian employees." *Id.* at 16. In Count IV, titled "Non[-]Compliance to OFO's Order[,]" he outlines his

claims for the Agency's alleged failure to offer him a *status quo* position pursuant to the OFO's Order following the Agency's breach of the settlement agreement. *Id.* at 17–18. Finally, Rajendran titles Count V "Violation of Procedures," and outlines a number of the Agency's actions and describes them as violating the Agency's own procedures. *Id.* at 18–32.

Rajendran alleges that he "has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish, [ ] los[t] wages . . . , [and] lost benefits, as a consequence of the defendant's unlawful conduct." *Id.* at 32. Rajendran thus seeks unspecified compensatory and punitive damages. *Id*. He details that he also seeks reinstatement, lost wages plus interest, reimbursement for loss of benefits, and dismissal of all personnel found "guilty of discrimination if they don't have the minimum qualification required for the position [ ] they are in[.]" *Id.* at 33–36.

## III. Pleading and Motion-to-Dismiss Standards.

The Secretary moves to partially dismiss the amended complaint under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). We set forth the standards that apply to each type of motion.

**A. Rule 12(b)(1) Standards.**

Rule 12(b)(1) permits the dismissal of an action for lack of subject-matter jurisdiction. Challenges to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be "facial" or "factual."[3] *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). The Secretary presents a facial challenge, contesting the sufficiency of the pleadings. *See id.*; *see also doc. 38* at 5. When there is a facial attack, as in the case at hand, "we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625,633 (3d Cir. 2017). We thus apply the same standards as described below for Rule 12(b)(6).

**B. Rule 12(b)(6) Standards.**

 In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6) "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light

---

[3] "In contrast to a facial challenge, a factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). The plaintiff has the burden of persuading the court it has jurisdiction. *Id.*

favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230. When the motion to dismiss includes a question of exhaustion, as here, "courts routinely consider the plaintiff's administrative filings as public records." *Mandel v. M & Q Packaging Corp.*, No. 3:09-CV-0042, 2009 WL 2579308, at *3 (M.D. Pa. Aug. 18, 2009); *see also Offer v. Hershey Entertainment & Resorts Company*, No. 1:19-CV-1078, 2020 WL 3288169, at *1 n.1 (M.D. Pa. June 18, 2020) ("Courts are usually limited to considering the complaint's allegations, 'exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents.' We can, however, consider 'document[s] integral to or explicitly relied upon in the complaint.' The EEOC charge is integral to [the Plaintiff's] complaint and is explicitly referenced therein. Its authenticity is also not in dispute. We will therefore consider it.") (internal citations omitted). "In deciding a motion to dismiss, district courts are permitted to consider the charge filed with the EEOC, and

related EEOC documents, including the letter from EEOC summarizing its investigation, the right to sue letter, and intake questionnaire." *E.E.O.C. v. Bimbo Bakeries USA, Inc.*, No. 1:09-CV-1872, 2010 WL 598641, at *1 n.2 (M.D. Pa. Feb. 17, 2010).

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

14

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. Discussion.

The Secretary argues that this court should partially dismiss the amended complaint according to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Doc. 37.* More specifically, the Secretary argues that this court lacks subject matter jurisdiction over Rajendran's Pennsylvania Human Relations Act ("PHRA") claims and requests for punitive damages, because Eleventh Amendment immunity applies to such claims. (Doc. 38 at 13–14). The Secretary also argues that Rajendran's hostile work environment claims, as delineated in Count III of the amended complaint, should be dismissed for failure to state a hostile work environment claim. *Id.* at 18–20. The Secretary further argues that Rajendran failed to exhaust certain claims in Counts I, II,

and V. *Id.* at 15–18. Similarly, the Secretary argues that the entirety of Count IV must be dismissed because it is based on Rajendran's allegations that the Agency failed to reinstate him in a status quo position and the EEOC has not yet made findings on these contentions. *Id.* at 20–25.

Rajendran does not counter the Secretary's argument regarding Eleventh Amendment immunity. (Doc. 42 at 5). ("Section B of the motion states that this Court should dismiss Plaintiff's claims under the [PHRA] and strike his claim for punitive damages under 12(b)(1) for lack of subject matter jurisdiction. The Amended Complaint filed in Pennsylvania has a cover page in which the Pennsylvania Human Relations Act is checked."). Rajendran argues that he exhausted all of his claims by attempting to amend his EEOC complaint. (Doc. 42 at 4). He also argues that his hostile work environment claim is predicated on "a multitude of adverse actions against the Plaintiff[,]" and, therefore, states a claim upon which relief can be granted. *Id.* at 4. And he alleges that to the extent that his non-compliance claim had not yet been ruled upon, he is statutorily permitted to seek judicial review without such a ruling. *Id.* at 7.

We address each argument in turn.

### A. PHRA Claims.

On the form complaint Rajendran submitted as his amended complaint, Rajendran marked that he brings claims under the PHRA, as well as claims under Title VII. (Doc. 17 at 1). When Rajendran sets out counts in this amended complaint, however, he fails to identify which claims are brought under the PHRA and which are brought under Title VII. *Id.* The PHRA does, in fact, forbid discrimination in employment based on, among other characteristics, national origin. 43 Pa. Cons. Stat. §955. The Secretary, however, argues that sovereign immunity applies to claims brought against the United States under the PHRA and thus these claims must be dismissed. (Doc. 38 at 14).

The "exclusive judicial remedy for claims of discrimination in federal employment" is Title VII. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *see also Reiser v. New Jersey Air Nat. Guard*, 152 Fed.Appx. 235, 238–39 (3d Cir. 2005). Accordingly, "[t]he law is clear that absent an express waiver, the United States is immune from suit under state antidiscrimination laws." *Sprowls v. Donahoe*, No. 1:13-CV-1759, 2014 WL 806476, at *3 (M.D. Pa. Feb. 28, 2014) (internal citations omitted) (citing *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999)). Because "[t]he federal government has not waived sovereign immunity with respect to the ADA and state anti-

discrimination laws such as the PHRA[,]" *Leitch v. MVM, Inc.*, No. Civ.A.03-4344, 2004 WL 1638132, at *7 (E.D. Pa. July 22, 2004), the federal government has immunity from claims brought under the PHRA.

Because Rajendran was a federal employee, suing the head of a federal agency, in her official capacity, for employment discrimination, Rajendran may only bring a suit under Title VII of the Civil Rights Act. Absent a waiver of sovereign immunity, which is not present here, the United States has immunity from claims brought under the PHRA. We, therefore, dismiss any and all PHRA claims.

### B. Punitive Damages.

Rajendran seeks both compensatory and punitive damages. (Doc. 17 at 32). In her brief in support of the motion to dismiss, the Secretary argues that the claim for punitive damages should be dismissed, because the 42 U.S.C. §1981a does not permit punitive damages against federal agencies. (Doc. 38 at 8).

As discussed above, Rajendran brings claims under Title VII of the Civil Rights Act. 42 U.S.C. §1981a which permits punitive damages "in cases of intentional discrimination in employment" where the defendant is not "a government, government agency[,] or political subdivision[.]" 42 U.S.C.

§1981a ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)[.]"). Rajendran brings these claims against the United States Secretary of the Army, in her official capacity as the "head of the department, agency, or unit" which acted as the employer in this matter. 42 U.S.C. §2000e-16(c). The defendant is thus "a government, government agency[,] or political subdivision" that cannot be liable for punitive damages under this statute. *See Lynn v. Secretary, Department of Defense*, 431 Fed. Appx. 147, 148–49 (3d Cir. 2011) (describing the procedural history of the case, including the lower court's reasoning for dismissing Title VII claims for punitive damages from the Secretary of Defense because 42 U.S.C. §1981a forbids punitive damages from a government, government agency, or political subdivision). Accordingly, we dismiss Rajendran's claims for punitive damages.

### C. Hostile Work Environment Claim.

Count III of the amended complaint is a claim for hostile work environment, based on Rajendran's national origin. (Doc. 17 at 16). Rajendran specifically alleges that he was "subjected to a hostile work environment because he was forced to endure the humiliation and

embarrassment of not receiving the same benefits afforded to other similarly situated Caucasian employees." *Id.* The Secretary argues that Rajendran cannot "'bootstrap' [the] alleged 'discrete acts of discrimination' into a broader hostile work environment claim." (Doc. 38 at 19). (quoting *Helvy v. Allegheny Cty.*, No. 2:14-cv-01686-TFM, 2015 WL 672262, at *3 (W.D. Pa. Feb. 17, 2015)). According to the Secretary, Rajendran's allegations are discrete acts of alleged discrimination and, therefore, he fails to state a claim for a hostile work environment. (Doc. 38 at 19–20).

In his brief in opposition to the pending motion to dismiss, Rajendran argues "[e]ven though each one of the actions by Agency may not necessarily be seen as hostile, together they provided a very hostile environment to the Plaintiff." (Doc. 42 at 5). He typifies the hostile work environment as "a multitude of adverse actions against the Plaintiff[,]" and summarizes the actions as follows: (1) prior to the time he filed his EEOC complaint, "every single training request he submitted was denied"; (2) "[a]fter [he] filed the EEOC complaint, [the] Agency made very stringent rules related to travel[,] making it extremely difficult for [him] to attend any and

every training"; and (3) the "Agency did not fully reimburse" Rajendran's travel expenses for multiple "TDY".[4] *Id.* at 4.

To prevail on a hostile-work-environment claim, a plaintiff must establish (1) that he suffered intentional discrimination because of a protected characteristic; (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would have detrimentally affected a reasonable person of like characteristics in like circumstances; and (5) the existence of *respondeat superior* liability. *Huston v. Proctor & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Whether an environment is hostile or abusive can be determined only by looking at all of the circumstances. *Harris*, 510 U.S. at 23. The circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

---

[4] Though Rajendran does not supply the definition for this abbreviation, Merriam-Webster Dictionary defines this abbreviation as "temporary duty." *TDY*, Merriam-Webster, https://www.merriam-webster.com/dictionary/TDY (last visited January 19, 2023).

employee's work performance." *Id.* "Harassment is pervasive where incidents of harassment occur with regularity." *Endres v. Techneglas, Inc.*, 139 F.Supp.2d 624, 631 (M.D. Pa. 2001).

Rajendran alleges that he experienced discrimination based on his national origin, due to his demotion, wrongful discipline, and "harassment." (Doc. 17 at 16). Rajendran further clarifies that he was "given less desirable positions[,]" and "denied training multiple times[.]" *Id.* Viewing these allegations in the light most favorable to Rajendran, he thus satisfies the first element and successfully alleges that he was subject to intentional discrimination based on a protected characteristic.

For workplace harassment to be actionable, though, it must satisfy each of the five elements of a hostile work environment. This includes that the harassment is sufficiently severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklife Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank*, 477 U.S. at 65, 67). The "conduct must be extreme to

22

amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Rajendran fails to describe harassment that is severe or pervasive. Instead, he alleges isolated incidents of denied training, a single incident of discipline that was not proportional to the infraction, and a demotion. He does not aver that these actions changed the conditions of his day-to-day employment. He does not describe an abusive working environment. The conduct he describes is not extreme.

Because Rajendran's complaint fails to allege actions that meet the second element of a hostile work environment, namely that the discrimination was severe or pervasive, he fails to state a claim upon which relief can be granted. Accordingly, we dismiss Count III of the amended complaint. Because Rajendran has already had the opportunity to file an amended complaint, Count III will be dismissed with prejudice.

### D. Failure to Exhaust Claims in Counts I, II, and V.

The Secretary argues that Rajendran failed to exhaust many of his claims at the administrative level prior to bringing the instant civil suit. (Doc. 38 at 15–18). This failure, according to the Secretary, necessitates dismissal of these claims. *Id*. Rajendran argues that all of his claims should be

considered exhausted because he attempted to include each of them in his EEOC complaint and the allegations are "connected / related [*sic.*] to the original set of 8 complaints." [5] (Doc. 42 at 2–3).

"To plead a claim under Title VII, 'a plaintiff must exhaust all required administrative remedies.'" *Houle v. Walmart, Inc.*, 447 F.Supp.3d 261, 276 (M.D. Pa. 2020) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)). "Before beginning a Title VII suit, a plaintiff must first file a timely EEOC charge." *Lewis v. City of Chicago*, 560 U.S. 205, 210 (2010). "[T]he purposes of the exhaustion requirement are to promote administrative efficiency, 'respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (quoting *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 370 (3d Cir. 1986)).

---

[5] Rajendran also questions the authenticity of the Order Clarifying Accepted Issues and Denying Complainant's Request to Amend, contained in Defendant's Exhibit 8 (Doc. 38-9 at 2–3). (Doc. 42 at 3). Out of an abundance of caution, we will rely upon only those EEOC documents that are not disputed.

"The 'relevant test' for determining whether a later claim needs to be exhausted despite the filing of a previous charge is a two-pronged inquiry into whether 'the acts alleged in the subsequent . . . suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom.'" *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (alterations in original)). Further, the second prong of this inquiry examines "if a *reasonable* investigation by the EEOC would have encompassed the new claims[,]" rather than considering only the investigation that took place. *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) (emphasis added); *see also Houle v. Walmart, Inc.*, 447 F.Supp.3d 261 (M.D. Pa. 2020). Thus, "'[t]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC].'" *Mandel*, 706 F.3d at 163 (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir. 1976)) (alterations in original).

The exhaustion analysis must center on the factual allegations rather than "legal arguments." *Houle v. Walmart, Inc.*, 447 F.Supp.3d 261, 276 (M.D. Pa. 2020) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462

(5th Cir. 1970)). "[A]n EEOC charge is not required to contain any legal conclusions[.]" *Houle*, 447 F.Supp.3d at 276 (citing *E.E.O.C. v. Kronos, Inc.*, 620 F.3d 287, 300 (3d Cir. 2010)). We, therefore, analyze whether each factual allegation has been exhausted through the administrative process.

In the amended complaint, Rajendran alleges that he was continually denied training. (Doc. 17 at 9). He lists specific training experiences he requested and was denied, *Id.* at 9–10, 12, and alleges that his supervisor made it more complicated for Rajendran to access training while requiring him to meet training requirements. *Id.* at 12, 13, 19.  He also alleges that he was downgraded to paygrade GS-7 contrary to proper procedure, resulting in his removal from his acquisition, ladder position. *Id.* at 12, 14. Third, he alleges that he was incorrectly considered AWOL after he forgot to sign in and could not be located by his supervisor for an hour and a half one workday, and that due to this, and missing a training session, he was suspended for three days, though neither infraction warranted such a harsh punishment. *Id.* at 10. Rajendran further alleges that the timing of this suspension was improper, as it required him to come to work on Monday, kept him from work Tuesday through Thursday, and required him to return to work on Friday, causing an increase in the occasions he needed to travel from his home in Michigan to his workplace in Pennsylvania. *Id.* at 32.

Rajendran asserted each of these allegations during the administrative process, as evidenced by the allegations in the Formal EEO Complaint (Doc. 38-2 at 3), the communications demonstrating that the original Formal EEO Complaint was amended to include allegations related to the three-day suspension (Docs. 38-3, 38-4), the Prehearing Order (Doc. 38-9 at 4–8), the Hearing Transcript (Doc. 38-10 at 3–4), the Hearing Decision (Doc. 38-11 at 3–4), the Final Agency Action Report (Doc. 38-12 at 2–3), and the Decision issued by the EEOC on the appeal of the aforementioned Hearing Decision (Doc. 38-13 at 2–3). Each of these documents summarize the claims considered in the same way: specific occasions in which Rajendran was denied training or training was cancelled, Rajendran's downgrade to pay scale GS-7, and the three-day suspension from work.

Thus, Rajendran has exhausted these claims and those claims that are "fairly within the scope of" these claims or "the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Some of the claims in the amended complaint are identical to those repeatedly identified in the EEOC documents. (Compare Doc. 17 with Docs. 38-2, 38-3, 38-4, 38-9, 38-10, 38-11, 38-12, 38-13). There are also claims that are clearly so connected with these exhausted claims that they are also

exhausted, including all allegations relating to training,[6] the three-day

suspension,[7] and Rajendran's demotion.[8]

---

[6] Rajendran makes the following allegations relating to being denied training. Each of these allegations, including any reiterations of these allegations throughout the amended complaint, should be considered properly exhausted:

(1) "Plaintiff several times requested training which was denied by his supervisors. This even included a course to attain certification in professional engineering (PE) which upper management mandated subordinate engineers to attend." (Doc. 17 at 9–10).

(2) "The Defendant accused Plaintiff of not attending training, however, the Defendant placed stringent constraints on travel arrangements that was not applied to other Caucasian employees. Defendant failed to make proper reservations and gave misleading instructions for training making it impossible for Plaintiff to attend the training, and then accused Plaintiff of missing training." *Id.* at 12.

(3) "Plaintiff was denied training that other similarly situated Caucasian employees were allowed to take." *Id.* at 12, 13.

(4) "The Defendant accused Plaintiff of not attending training, however, the Defendant placed stringent constraints on the training not applied to other Caucasian employees and failed to make proper reservations for training and then accused Plaintiff of missing training." *Id.* at 13.

(5) "Plaintiff was not allowed to directly leave from home for travel to TDY site and was required to stop at the depot (on a Sunday) before traveling to TDY site, however other employees were given this option of leaving from home." *Id.*

(6) "Plaintiff was required to complete 40 hours of training amidst training denials and cancellations." *Id.* at 19.

[7] Rajendran makes the following allegations relating to his suspension. Each of these allegations, including any reiterations of these allegations throughout the amended complaint, also should be considered properly exhausted:

(1) "On August 23, 2010[,] Plaintiff had forgotten to sign-in in the morning and the Defendant considered this AWOL (absence without leave) and suspended Plaintiff for three (3) days without pay in addition to nonpayment

for 1.5 hours on the day of forgetting to sign in. 3[-]day suspension is not proper for this alleged offense." *Id.* at 10.

(2) "Supervisor Morman stated that he suspended Plaintiff because he was not aware of the whereabouts of the Plaintiff on the day Plaintiff forgot to sign in. Mr. Morman also stated that he would give to anyone an opportunity to explain but he failed to give Plaintiff an opportunity to explain his whereabouts." *Id.*

(3) "Another employee who was a Caucasian reporting to Supervisor Morman did not sign in to roll call and was later reminded to sign in at noon. Mr. Morman indicated that if other employees did not sign in that he would remind them, however, he did not remind Plaintiff was to sign in." *Id.*

(4) "To defend their disciplinary action, Defendant brought up an incident where a comparator, a male Caucasian employee Larry Frable had committed multiple severe offense . . . . However, plaintiff received more severe consequence for milder offences which included 1) forgetting to sign-in and 2) inability to attend a training requiring travel, as a result of failure to reserve a rental car by the Travel Department, denial of every other mode of transportation requested by the Plaintiff by Mr. Morman and stringent constraints requiring the Plaintiff to travel 555 miles on a Sunday from home in Michigan to secure the "unreserved" rental car in PA in spite of explaining the difficulties. Plaintiff admitted to forgetting to sign-in and received 3[-]day suspension with no pay and lost wage for 1.5 hours, whereas the Caucasian employee Larry Frable admitted to his guilt and received NO disciplinary action at all. Forgetting to sign-in is not on the list or table of punishable offenses." *Id.* at 10–11.

(5) "Plaintiff forgetting to sign-in was treated as AWOL because the supervisor Mr. Morman was unaware about Plaintiff's whereabouts. Not knowing Plaintiff's whereabouts should not be considered as AWOL and is not proper for this alleged offense especially when the Plaintiff is expected to be at a large (nearly a square mile) shop floor area and not expected to be always at his seat." *Id.* at 11.

(6) "My suspension was purposely made Tuesday - Thursday requiring me to travel 10 hours each way just to work on Monday and Friday. It is a discrimination based on retaliation for filing EEO complaint on August 18th[,] 2010[,] and national origin." *Id.* at 32.

[8] Rajendran makes the following allegations relating to his demotion. Each of these allegations, including any reiterations of these allegations throughout the amended complaint, also should be considered properly exhausted:

Rajendran also brings many claims that are completely unrelated to the allegations addressed in the administrative process. These claims include (1) failure to promote Rajendran to a GS-11 position after his first year of employment (Doc. 17 at 14); (2) failure to reimburse him for travel and moving expenses (*Id.* at 13, 19); (3) failure to grant him administrative leave when he was out of work to interview with other federal agencies (I*d.* at 19); (4) failure to grant Rajendran access to personal belongings, information on a hard drive, his email account, and his voice messages (*Id.* at 19); (5) "[u]ndue restrictions . . . placed forbidding [his] presence in various places within the Depot" (*Id.* at 22); (6) failure to discipline an employee who "swore at the Plaintiff and bragged about it" (*Id.* at 12); (7) "recommending putting Plaintiff on [a Performance Improvement Plan] before the Plaintiff was in that position[,]" violating procedure (*Id.* at 18); and (8) that the FFC investigation was biased (I*d.* at 31). Rajendran did not bring any of these eight claims ("hereinafter "the unexhausted claims") before the EEOC.

---

(1) "Plaintiff's position was downgraded from Mechanical Engineer (GS-09) to Engineering Technician (GS-07), removed from a ladder position and removed from an acquisition position, as retaliation for filing an EEOC complaint that was being processed." *Id.* at 12, 13.

(2) "Agency did not follow the correct procedure to demote Plaintiff from GS-9 Engineer to GS-7 technician position." *Id.* at 14.

(3) "Removing Plaintiff from acquisition position is a procedural violation." *Id.*

(4) "Removing Plaintiff from ladder position is a procedural violation." *Id.*

Accordingly, we will dismiss the unexhausted claims and to the extent that the complaint can be read to include other claims unrelated to training, demotion, the three-day suspension, and, as discussed below, non-compliance with the OFO order, those claims are also dismissed for Rajendran's failure to exhaust them.

### E. Non-Compliance with OFO Order.

The amended complaint contains one last claim that the Secretary argues has not been exhausted: Count IV, "Non[-]Compliance to OFO's Order." (See Doc. 17 at 17); (see also Doc. 38 at 23). After the Agency breached a Settlement Agreement which had endeavored to put to rest Rajendran's previously discussed claims for discrimination and retaliation, the OFO ordered the Agency to give the Plaintiff the option either to require the Agency to fully comply with the settlement agreement or to cancel the settlement agreement and return to a *status quo* position at the Agency. (Doc. 17 at 12). Rajendran alleges that, though he chose the option of returning to a *status quo* position, the Agency offered him a position that was not *status quo*, thereby failing to comply with the OFO's directive. *Id*. at 13.

The Secretary argues that this claim has not been exhausted because the EEOC has not yet issued a decision on Rajendran's petition for

enforcement. (Doc. 38 at 23). The Secretary cites cases in which courts declined to address claims regarding enforcement of EEO orders to support this argument. *Id.* at 24 (citing *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003); *Murchison v. Astrue*, 689 F. Supp. 2d 781, 791 (D. Md. 2010);[9] *Daly v. Runyon*, No. 95 C 5954, 1996 WL 754112, at \*3 (N.D. Ill. Dec. 31, 1996); *Doughty v. Barnhart*, No. 05-0838, 2007 WL 2908809, at \*3 (W.D. La. Oct. 4, 2007). The Secretary further argues that the decision issued by the EEOC in 2013 ("2013 Commission Decision") (Doc. 38-7) sets forth two alternatives for Rajendran, should the Agency fail to comply with the decision: either petition the Commission or file a civil action. (Doc 38 at 21–22). Because Rajendran filed a petition for enforcement with the EEOC, the Secretary argues, Rajendran cannot bring a civil action until the EEOC rules on the petition for enforcement. *Id.* Rajendran argues that the hearings that took place on April 18, 2016, April 19, 2016, May 19, 2016, and August 2, 2016, included testimony relating to the question of whether the position to which he returned in 2013 was truly "*status quo*" as ordered. (Doc. 42 at 3).

---

[9] We note that this case was reversed in part on appeal, and the Fourth Circuit explicitly stated that it was not deciding whether "§1614.503(g) sets forth prerequisites to filing a civil enforcement action[.]" *Murchison v. Astrue*, 466 Fed.Appx. 225, 229–30 (4th Cir. 2012). The Fourth Circuit instead found that, if there were prerequisites, they would have been met, allowing for the filing of a civil enforcement action. *Id.*

This testimony, according to Rajendran, means that the claim was exhausted despite the lack of a ruling on this matter. *Id*.

Some courts have concluded that a civil action for enforcement of an administrative order must be preceded by an EEOC decision regarding compliance. *See, e.g., Tshudy v. Potter*, 350 F.Supp.2d 901, 906 (D.N.M. 2004) ("In order for this Court to have jurisdiction over Plaintiff's enforcement action, there must have been an EEOC determination of non-compliance.") (citing *Timmons v. White*, 314 F.3d 1229, 1231–32 (10th Cir. 2003); 29 C.F.R. §1614.503(g)); *Goodridge v. Astrue*, No. 1:07-CV-1918-RLV-RGV, 2008 WL 11333936, at *4 (N.D. Ga. Apr. 28, 2008) ("Here, Goodridge did not file a petition for enforcement with the EEOC prior to filing the present civil actions and, therefore, there is no determination by the EEOC of noncompliance on the part of the Agency."); *Campbell v. Barr*, No. 3:19-CV-1887-L-BH, 2021 WL 1522061, at *7 (N.D. Tex. Feb. 3, 2021) ("'Courts have found that, under 29 C.F.R. §1614.503(g), the prerequisites to filing a suit for enforcement are that (1) the Commission has determined that an agency is not complying with a prior decision, or (2) the agency has failed or refused to submit any required report of compliance.'") (citing *Robinson v. Geithner*, No. CIV.A. H-11-0913, 2012 WL 1600020, at *5 (S.D. Tex. May 7, 2012)). The 2013 Commission Decision (Doc. 38-7), however, conflicts with the

conclusion that an EEOC decision regarding compliance is a prerequisite for

a civil action for enforcement of an administrative order:

> If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order. 29 C.F.R. §1614.503(a). The Complainant also has the right to file a civil action to enforce compliance with the Commission's order *prior to or following an administrative petition for enforcement.*

Doc. 38-7 at 6 (emphasis added). This indicates that a decision on

enforcement is not a prerequisite to a civil action, as a plaintiff is permitted

to file a civil action before ever filing an administrative petition for

enforcement. Further, other courts have declined to decide whether an

EEOC decision is required prior to filing a civil action, illustrating further the

lack of clarity in this area. *See, e.g., Murchison*, 466 Fed.Appx. at 229–30

("The district court also relied on its conclusion that 29 C.F.R. §1614.503(g)

sets forth two prerequisites, one of which must be met in order to file a civil

action for enforcement. . . . [A]ssuming, *but without deciding*, that

§1614.503(g) sets forth prerequisites to filing a civil enforcement action, [the

plaintiff] would have satisfied one of those prerequisites[.]" (emphasis

added)); *Farrington v. Johnson*, 206 F.Supp. 3d 634, 641–42 (D.D.C. 2016)

("Thus, in the absence of a determination by the EEOC that the 'agency is

not complying' with an order or has failed to submit a compliance report, it is

unclear whether the claimant's right to seek judicial review of the agency's 'refusal to implement the ordered relief' has been triggered.").

Though the Secretary claims that the 2013 Commission Decision provided Rajendran with two mutually exclusive alternatives to either petition the Commission for enforcement or file a civil action, she omits the language providing that Rajendran has "the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement." (Compare doc. 38 at 21–22 with doc. 38-7 at 6). She thus fails to address this conflict between the 2013 Commission Decision and the cases that found an EEOC decision on compliance was a prerequisite for civil action, as does Rajendran in his brief in opposition. Given the lack of clarity in this matter, we deny the motion to dismiss this count at this point in the proceedings.

## V. Amendment.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,

615 F.3d 159, 175 (3d Cir. 2010). "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id.* (quoting *in re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)). Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *Id.* "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'" *Id.* (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007)).

Here, Rajendran has filed an amended complaint once before, with the above-described defects. Additionally, Rajendran cannot bring claims under the PHRA or for punitive damages; therefore, it would be futile to amend the complaint as to these claims. Finally, given that we have reviewed all documents relevant to the exhaustion of his claims, it similarly would be futile to amend the complaint as to the allegations that have not been exhausted. We thus do not grant Rajendran leave to amend the complaint.

## VI. Conclusion.

For the foregoing reasons, we grant in part and deny in part the motion to dismiss. (Doc. 37). We dismiss all claims brought under the PHRA, all claims for punitive damages, the claim—as described in Count IV—for hostile work environment, and the unexhausted claims. However, we deny the motion to dismiss Rajendran's claim that the Agency did not comply with the OFO's order to reinstate him to a *status quo* position. The following claims, therefore, remain: (1) Count I for National Origin Discrimination-Disparate Treatment under Title VII; (2) Count II for Retaliation under Title VII; (3) Count IV for Non-Compliance to the OFO's Order; and (4) Count V for Violation of Procedures under Title VII. Further, we note that the unexhausted claims contained in each of these counts have been dismissed.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 28, 2023**
22-0581-01